**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES R. WALSH, Trustee of the ) | | |
| Bankruptcy Estate of Bobbie Jo S. Dively, ) | | |
| ) | **CIVIL ACTION NO. 3:15-45** | |
| Appellant, ) | | |
| ) | **JUDGE KIM R. GIBSON** | |
| v. ) | | |
| ) | | |
| BOBBIE JO S. DIVELY, SEAN DIVELY, ) | | |
| FEDEX CORPORATION, HEWITT ) | | |
| ASSOCIATES, LLC, ) | | |
| ) | | |
| Appellees. ) | | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

This matter comes before the Court on Appellant's Notice of Appeal of the Bankruptcy Court's January 7, 2015, order denying Appellant's motion for authority to execute a qualified domestic relations order for want of subject-matter jurisdiction. (ECF No. 1; *see also Walsh v. Dively*, No. 12-70166-JAD, 2015 Bankr. LEXIS 124 (Bankr. W.D. Pa. Jan. 7, 2015).) Appellant appealed the Bankruptcy Court's decision on February 18, 2015, (ECF No. 1), and filed a brief in support of its appeal on March 4, 2015 (ECF No. 2). Appellee FedEx Corporation filed its brief in opposition to Appellant's appeal on April 10, 2015, (ECF No. 7), and this matter is now ripe for disposition. For the reasons set forth below, this Court will deny Appellant's appeal and will affirm the Bankruptcy Court's decision denying Appellant's motion for authority to execute a qualified domestic relations order.

1

## II.    JURISDICTION

This Court has jurisdiction to hear appeals from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides:

> The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

28 U.S.C. § 158(a).  The appeal in this case is taken from the decision rendered by the Bankruptcy Court of the Western District of Pennsylvania.  This Court therefore has jurisdiction to hear the appeal from the Bankruptcy Court's decision.  *See In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012) ("[A] district court sits as an appellate court to review a bankruptcy court."); *see also In re Professional Management*, 285 F.3d 268 (3d Cir. 2002) (a district court's jurisdiction is proper as an appeal of the final order of the bankruptcy court under 28 U.S.C. §158(a)).

## III.    BACKGROUND

### A.  Factual Background

The Court adopts the facts as set forth in the Bankruptcy Court's December 4, 2014, memorandum opinion.  *See Walsh v. Dively*, 522 B.R. 780, 784-85 (Bankr. W.D. Pa. 2014).  This case arose out of a martial settlement agreement that was reached in 2011 between Debtor Bobbi Jo S. Dively and Sean Dively.  *Id.* at 784.  The agreement awarded Ms. Dively a 50% interest in Mr. Dively's FedEx pension, and the pension award was incorporated into the

2

state court's October 11, 2011, order.  *Id.* at 785.  Ms. Dively filed a bankruptcy petition on

February 22, 2012.  *Id.* at 784.  Appellant has accepted the present value of Ms. Dively's

interest as being $77,646.39 as of the petition date.  *Id.* at 785.  On April 29, 2014, Appellant

filed a motion seeking authority to execute a qualified domestic relations order ("QDRO") in

an effort to liquidate Ms. Dively's interest in the pension benefits.  *See id.* at 781.

### B.	The Bankruptcy Court's Decision

Relying upon *Urmann v. Walsh*, 523 B.R. 472 (W.D. Pa. 2014), the Bankruptcy Court

first determined that Appellant had standing to succeed to Ms. Dively's interest because "a

trustee in bankruptcy may 'stand in the shoes' of the debtor pursuant to 11 U.S.C. § 541, and

assert the debtor's rights to pursue a QDRO (to the extent that the retirement funds at issue

constitute property of the bankruptcy estate)."  *Dively*, 522 B.R. at 783 (quoting *Urmann*, 523

B.R. at 482).  Specifically, the Bankruptcy Court explained that, when read together, Sections

323, 541, and 704 of the Bankruptcy Code provide that:  (1) "the trustee succeeds to the

debtor's legal and equitable interests as a general matter;" (2) "the trustee has a duty to

liquidate assets of the estate for the benefit of creditors;" and (3) "the trustee may bring

appropriate legal actions in a court of competent jurisdiction if necessary to liquidate assets

of the bankruptcy estate."  *Id.* at 784 (citing 11 U.S.C. § 541(a)(1); 11 U.S.C. § 704(a)(1); 11

U.S.C. § 323).  The Bankruptcy Court determined that although a bankruptcy trustee is not

specifically identified as an "alternate payee" or "beneficiary" in ERISA, a trustee seeking the

issuance of a QDRO is consistent with the statutes discussed above.  *Id.* ("ERISA . . . does not

preclude the ability of a bankruptcy trustee to seek the entry of a QDRO if the bankruptcy trustee has succeeded to the debtor's pension plan interests by operation of law.").

After determining that a bankruptcy trustee has standing to succeed to a debtor's interest as an "alternate payee" or "beneficiary" under ERISA, the Bankruptcy Court next analyzed whether a Chapter 7 trustee has standing to liquidate the pension interests awarded to the debtor. *Id.* The Bankruptcy Court noted that the Supreme Court has held that retirement plans containing a legally enforceable "anti-alienation clause" are not "property of the estate" pursuant to 11 U.S.C. § 541(c)(2). *Id.* at 785 (citing *Patterson v. Shumate*, 504 U.S. 753 (1992)). The Bankruptcy Court also explained that, pursuant to the Bankruptcy Code, "debtors in bankruptcy have the right to exempt from the reach of the bankruptcy trustee various retirement funds and pension plan assets." *Id.* (citing 11 U.S.C. §§ 522(b)(3)(C), 522(d)(10)(E), and 522(d)(12)).

In analyzing *Patterson* and Sections 541(c)(2), 522(b)(3)(C), 522(d)(10)(E), and 522(d)(12) of the Bankruptcy Code, the Bankruptcy Court determined that "retirement funds in some instances may be outside the ambit of 'property of the estate.'" *Id.* (citing *Rousey v. Jacoway*, 544 U.S. 320 (2005)). In relation to the instant case, the Bankruptcy Court reasoned that "if Ms. Dively's pension interests fall under the umbrella of 11 U.S.C. §§ 541(c)(2), 522(b)(3)(C), 522(d)(10)(E) or 522(d)(12), the assets would be excluded from 'property of the estate' and the trustee in this case may not make any claim to the assets for the benefit of creditors." *Id.* (citing *Nelson v. Ramette*, 322 F.3d 541 (8th Cir. 2003)). In applying the facts,

4

the Bankruptcy Court found that Ms. Dively had a pre-bankruptcy vested interest in the pension plan and that her interest was vested by operation of the marital settlement agreement, which was incorporated into the prepetition divorce decree. *Id.* at 786. Because Ms. Dively's property interest was in an ERISA qualified pension plan, the Bankruptcy Court opined that her interest in the FedEx pension "is conceivably outside the scope of 'property of the estate.'" *Id.* Specifically, the Bankruptcy Court stated that if Ms. Dively's interest in the pension is superior to the interest of the Chapter 7 trustee, then the Chapter 7 trustee would have no claim to the assets and would lack an "injury in fact" or a sufficient "personal stake" in the outcome of the proceeding to warrant the invocation of the Bankruptcy Court's limited federal subject-matter jurisdiction. *Id.* As a result, the Bankruptcy Court concluded that the disposition of the motion to execute QDRO should be deferred until the Chapter 7 trustee demonstrated that he had standing to liquidate Ms. Dively's pension interests. *Id.*

The Bankruptcy Court recognized that Ms. Dively had not claimed an exemption in the pension but noted that Ms. Dively did not agree to convey her interest in the proceeds of the FedEx pension to the trustee. *Id.* at 786-87. The Bankruptcy Court stated that it was unable to find any persuasive authority supporting the trustee's argument that he could surcharge the pension because Ms. Dively wrongfully failed to disclose it and therefore forfeited her interest in it. *Id.* at 787. Instead, the Bankruptcy Court's own research revealed that the Supreme Court has found no basis for a surcharge of exempt assets by a bankruptcy trustee, even in instances where the debtor wrongfully failed to disclose the asset, because

such relief is not included in the Bankruptcy Code. *Id.* (citing *Law v. Siegel*, 134 S. Ct. 1188 (2014)). The Bankruptcy Court therefore concluded that the trustee must demonstrate "an independent basis" for claiming that the pension interests are property of the estate before it would consider the trustee's motion to execute QDRO. *Id.*

Finally, the Bankruptcy Court noted that Ms. Dively disclosed to her counsel her pension interests for inclusion in the bankruptcy schedules and made all disclosures required by law. *Id.* Because Ms. Dively's counsel withdrew his representation, Ms. Dively did not file a brief in response to the trustee's motion to execute QDRO. *Id.* The Bankruptcy Court reasoned that Ms. Dively may not have understood the consequences of the trustee's motion and found that she should be afforded an opportunity to be heard. *Id.* at 787-88. As a result, the Bankruptcy Court ordered the issuance of a rule to show cause as to whether Ms. Dively's pension interests should be excluded from the property of the estate and whether the motion to execute QDRO should be denied for lack of standing by the Chapter 7 trustee. *Id.* at 788. Following the show-cause hearing, the Bankruptcy Court denied the trustee's motion to execute QDRO for want of subject-matter jurisdiction. *See Dively*, 2015 Bankr. LEXIS 124, at *1.

## IV.    STANDARD OF REVIEW

This Court may exercise appellate jurisdiction over final judgments, orders, and decrees entered by bankruptcy courts. 28 U.S.C. § 158(a)(1). In reviewing a bankruptcy court's decision, a district court must apply several standards of review. First, a bankruptcy

6

court's factual findings are reviewed for clear error and its exercise of discretion for abuse thereof.  *In re Trans World Airlines, Inc.*, 145 F.3d 124, 131 (3d Cir. 1998).  A factual finding is "clearly erroneous" if the reviewing court is "left with a definite and firm conviction that a mistake has been committed."  *In re W.R. Grace & Co.*, 729 F.3d 311, 319, n.14 (3d Cir. 2011).  Under the clearly erroneous standard, "it is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data."  *Coalition to Save Our Children v. State Bd. of Educ.*, 90 F.3d 752, 759 (3d Cir. 1996) (internal quotations omitted).

Second, a bankruptcy court's legal determinations are reviewed de novo.  *See In re Ruitenberg*, 745 F.3d 647, 650 (3d Cir. 2014); *see also Am. Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76, 80 (3d Cir. 1999).  Third, mixed questions of fact and law must be differentiated and reviewed under the appropriate standard for each component.  *See In re Montgomery Ward Holding Corp.*, 326 F.3d 383, 387 (3d Cir. 2003).  Fourth, a bankruptcy court's exercise of discretion must be reviewed for abuse.  *In re Friedman's Inc.*, 738 F.3d 547, 552 (3d Cir. 2013).  A bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts.  *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

## V.    ANALYSIS

### A.    The Bankruptcy Court's Factual Findings

As noted above, the Court cannot disturb the factual findings of the Bankruptcy Court unless they are "clearly erroneous." *In re W.R. Grace & Co.*, 729 F.3d at 319, n.14. The only factual findings that were made by the Bankruptcy Court concerned the procedural history of Mr. and Ms. Dively's marital settlement agreement, Ms. Dively's bankruptcy petition, and Appellant's motion to execute a QDRO. *See Dively*, 522 B.R. at 784-85. The parties' briefs reiterate the facts as set forth by the Bankruptcy Court, (*see* ECF No. 2 at 6-8; ECF No. 7 at 5-6), and the documents attached to Appellant's appeal confirm these facts, (*see* ECF No. 1). The Court therefore cannot conclude that the Bankruptcy Court's factual findings are "completely devoid of minimum evidentiary support displaying some hue of credibility" or "bear[] no rational relationship to the supportive evidentiary data." *DiFederico*, 201 F.3d at 208. Accordingly, the Court may not disturb the Bankruptcy Court's factual findings.

### B.    The Bankruptcy Court's Legal Conclusions

As discussed above, this Court exercises plenary, or de novo, review over any legal conclusions reached by the Bankruptcy Court. *In re Ruitenberg*, 745 F.3d at 650 (3d Cir. 2014); *Am. Flint Glass Workers Union*, 197 F.3d at 80. The Court must "exercise plenary review of the court's interpretation and application of [the] facts to legal precepts." *In re Nortel Networks, Inc.*, 669 F.3d 128, 137 (3d Cir. 2011).

In his brief in support of his appeal, Appellant argues that Ms. Dively's interest in the pension became property of the estate upon commencement of the case. (ECF No. 2 at 9.) Appellant asserts that the Bankruptcy Court erred by holding that Ms. Dively owned a vested interest in the pension prior to her bankruptcy filing. (*Id.* at 10.) Specifically, Appellant "candidly admits" that if Ms. Dively had obtained a QDRO before filing her petition, then the interest in the pension would not be the estate's property. (*Id.*) However, because Ms. Dively did not "perfect" her interest in the pension by seeking a QDRO in state court before filing her bankruptcy petition, Appellant argues that the pension is the estate's property. (*Id.* at 10-11.)

In support of his argument, Appellant contends that the Bankruptcy Court improperly distinguished *Walsh v. Burgeson*, 504 B.R. 800 (Bankr. W.D. Pa. 2014), because the Bankruptcy Court in *Burgeson* concluded that a QDRO "provides the basis for a spouse to assert an entitlement to a benefit under an ERISA-qualified pension." (*Id.* at 12-13 (quoting *Burgeson*, 504 B.R. at 833).) Appellant further relies upon *Clark v. Rameker*, 134 S. Ct. 2242 (2014), which held that an inherited IRA could not be claimed as exempt because allowing such an exemption would constitute a "free pass." (*Id.* at 14 (quoting *Clark*, 134 S. Ct. at 2248 (internal quotations omitted).) In applying this rationale to the instant case, Appellant argues that allowing Ms. Dively to obtain a QDRO to effectuate the property settlement agreement after the discharge and closing of her bankruptcy petition "would clearly result in a 'free pass' and a windfall to [her]." (*Id.* at 14-15.)

9

Appellant discusses ERISA's provisions and asserts that Ms. Dively is not an "alternate payee" because she failed to obtain a QDRO and therefore cannot be considered to be a "beneficiary" under the pension. (*Id.* at 16-18.) Appellant contends that the Bankruptcy Court's reliance upon *Patterson*, 504 U.S. 753, and *Rousey*, 544 U.S. 320, was misplaced because *Patterson* involved a pension plan that contained anti-alienation provisions for tax qualification, and *Rousey* involved an IRA. (*Id.* at 18.) Appellant further claims that the Bankruptcy Court erred by holding that Ms. Dively possessed a vested interest in the pension as a result of the entry of the property settlement agreement because "with the entry of the [agreement], [Ms. Dively] was merely granted rights as against [Mr. Dively]; the [agreement] itself, did not confer rights vis-à-vis third parties, in this instance the [p]ension." (*Id.* at 19-20.)

In response, FedEx argues that the state court's divorce decree fully vested Ms. Dively in her portion of the pension benefits. (ECF No. 7 at 8.) Relying upon *Crawford v. Hertzberg*, No. 13-23753-JAD, 2014 Bankr. LEXIS 4692 (Bankr. W.D. Pa. Nov. 13, 2014), FedEx asserts that the marital settlement agreement awarded Ms. Dively a portion of the pension benefit, and this award was incorporated into the divorce decree. (*Id.* at 9-10.) FedEx contends that Ms. Dively therefore had a fully vested interest in the pension benefits upon entry of the divorce decree. (*Id.* at 10-11.)

Regarding the absence of a QDRO, FedEx argues that "[w]hile a QDRO is certainly a way to obtain a vested interest in pension benefits, thereby excluding them from a

bankruptcy estate, it is by no means the only way such an interest is obtained." (*Id.* at 12.) In support of its argument, FedEx explains that in *Patterson*, the Supreme Court concluded that nonbankruptcy laws, which include state laws, exist to create the necessary interest to exclude property from the estate. (*Id.* at 12-13.) Because the divorce decree was entered pursuant to Pennsylvania state law, FedEx contends that the absence of a QDRO is irrelevant and that Ms. Dively's interest in the pension benefits vested months before she filed her bankruptcy petition. (*Id.* at 13-14.)

Having conducted a de novo review of the law, the Court concludes that the Bankruptcy Court did not err in denying Appellant's motion to execute QDRO. In conducting its de novo review, the Court finds the reasoning in the recent decision of *Crawford v. Hertzberg*, No. 15-CV-240, 2015 U.S. Dist. LEXIS 170724 (W.D. Pa. Dec. 22, 2015) (Bissoon, J.), to be persuasive. In *Crawford*, Mr. and Ms. Hertzberg both filed for bankruptcy after reaching a marriage-settlement agreement. *Id.* at *2. The trustee sought to recover funds that were held in an ERISA-qualified retirement account and that were owed to Ms. Hertzberg under the marriage settlement agreement. *Id.* at *2. Relying upon *Patterson*, the Bankruptcy Court recognized that retirement funds properly may be excluded from the property of a bankruptcy estate and scheduled a show-cause hearing. *Id.* at *2-3. After the trustee was unable to explain why the *Patterson* exclusion did not apply, the Bankruptcy Court dismissed the trustee's proceeding. *Id.* at *3.

On appeal, the trustee argued, for the first time, that Ms. Hertzberg's interest in the funds was unperfected because a QDRO was not entered in the state-court proceedings. *Id.* at *4. After finding that the trustee had waived this argument, the District Court determined that the trustee's argument "brushes over one incredibly important fact in this case, namely, that there existed a Court Order, entered prior to both . . . Bankruptcy Cases, which approved and incorporated the terms of the Marriage Settlement Agreement." *Id.* at *6 (internal quotations and alterations omitted). The District Court explained that "a 'QDRO or divorce decree' pre-dating the bankruptcy petition is sufficient to invoke the *Patterson* exclusion" and concluded that "[t]he Court of Common Pleas's divorce decree, entered well before either ex-spouse filed a bankruptcy petition, brings this case within the confines of *Patterson*, and the ERISA-plan proceeds permissibly were excluded from her bankruptcy estate." *Id.* at *6-7 (citing *Urmann*, 523 B.R. at 477; *In re Burgeson*, 504 B.R. at 804).

In the instant case, Ms. Dively had a pre-bankruptcy vested interest in the pension plan. Her interest was vested by operation of the marital settlement agreement, which was incorporated into the prepetition divorce decree. Because Ms. Dively's property interest was in an ERISA qualified pension plan, her interest in the FedEx pension invokes the *Patterson* exclusion. The Bankruptcy Court therefore properly excluded the ERISA-plan proceeds from Ms. Dively's bankruptcy estate.

**C. The Bankruptcy Court's Exercise of Discretion**

Finally, the Court reviews a bankruptcy court's exercise of discretion for abuse. *In re Friedman's Inc.*, 738 F.3d at 552. A bankruptcy court abuses its discretion when its ruling rests upon an error of law or a misapplication of law to the facts. *In re O'Brien Envtl. Energy, Inc.*, 188 F.3d at 122. Because the Court concurs with the Bankruptcy Court's application of the relevant law to Appellant's motion for authority to execute a QDRO, no error of law or misapplication of the law to the facts is present in the Bankruptcy Court's decision. Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion.

**VI.    CONCLUSION**

For the foregoing reasons, the Court will deny Appellant's appeal and will affirm the decision of the Bankruptcy Court, as memorialized in *Walsh v. Dively*, 522 B.R. 780, 784-85 (Bankr. W.D. Pa. 2014), and *Walsh v. Dively*, No. 12-70166-JAD, 2015 Bankr. LEXIS 124 (Bankr. W.D. Pa. Jan. 7, 2015).

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES R. WALSH, Trustee of the )
Bankruptcy Estate of Bobbie Jo S. Dively, )
  )    CIVIL ACTION NO. 3:15-45
Appellant, )
  )    JUDGE KIM R. GIBSON
v. )
  )
BOBBIE JO S. DIVELY, SEAN DIVELY, )
FEDEX CORPORATION, HEWITT )
ASSOCIATES, LLC, )
  )
Appellees. )

## ORDER

**AND NOW**, this 8th day of February, 2016, upon consideration of Appellant's appeal (ECF No. 1), Appellant's brief in support of his appeal (ECF No. 2), and Appellee FedEx Corporation's brief in opposition to Appellant's appeal (ECF No. 7), **IT IS HEREBY ORDERED** that Appellant's appeal is **DENIED. IT IS FURTHER ORDERED** that the decision of the Bankruptcy Court, as memorialized in *Walsh v. Dively*, 522 B.R. 780, 784-85 (Bankr. W.D. Pa. 2014), and *Walsh v. Dively*, No. 12-70166-JAD, 2015 Bankr. LEXIS 124 (Bankr. W.D. Pa. Jan. 7, 2015), is **AFFIRMED**.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE